UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DENNIS LEGER,

                    Plaintiff,

v.                                                    Case No.  5:03-cv-187-Oc-GRJ

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits. (Doc. 1.)  The Commissioner has answered (Doc. 18) and both parties have filed briefs outlining their respective positions.  (Docs. 25 & 26.)  For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. §405(g).

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on February 6, 2001, claiming a disability onset date of May 28, 2000. (R. 111-.)[1]  Plaintiff's application was denied initially (R. 89-), and upon reconsideration. (R. 84-86.)  Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").  (R. 83.)  The ALJ

---

[1] According to the ALJ, Plaintiff also filed a claim for Supplemental Security Income payments on January 31, 2001.  (R. 9).  However, the Court has been unable to find this claim in the record.  The ALJ also noted that Plaintiff filed a Title II application for disability insurance benefits on August 5, 2000 and a Title XVI application for supplemental security income on July 14, 2000.  (R. 10.)  According to the ALJ, these applications were denied at the initial level on September 7, 2000 and were not appealed further. (R. 10).

conducted Plaintiff's administrative hearing on August 23, 2002. (R. 67.)   The ALJ

issued a decision unfavorable to Plaintiff on January 7, 2003 (R. 64-76.)  The Appeals

Council denied Plaintiff's request for review. (R. 98-99.)  Plaintiff then appealed to this

Court.   At the Commissioner's request, the Court remanded the case pursuant to

sentence six of 42 U.S.C. §405(g), because the hearing tape was inaudible and

administratively closed the file. (R. 100-03.)  On September 17, 2004, the same ALJ

held a supplemental hearing.  (R. 48-60.)  On November 18, 2004, the ALJ issued a

decision unfavorable to Plaintiff.  (R. 9-19.)  Plaintiff did not file exceptions to the ALJ's

decision nor did the Appeals Council assume jurisdiction, making the November 18,

2004 decision the final decision of the Commissioner.  On February 9, 2005, the Court

reopened the case. (Doc. 19.)

### III. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

---

[2] See 42 U.S.C. § 405(g).

[3] See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d
835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842
(1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

---

[4] See Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] See Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] See Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] See 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] See 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] See 20 C.F.R. § 404.1520(b).

3

not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments

meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her

RFC, age, education, and past work) prevent her from doing other work that exists in

the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work

initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to

demonstrate that "other work" which the claimant can perform currently exists in the

national economy.[16] The Commissioner may satisfy this burden by pointing to the grids

for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has

a non-exertional impairment which significantly limits his or her basic work skills or when

---

[11] See 20 C.F.R. § 404.1520(c).

[12] See 20 C.F.R. § 404.1520(d).

[13] See 20 C.F.R. § 404.1520(e).

[14] See 20 C.F.R. § 404.1520(f).

[15] See Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16]See Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] See Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

## IV. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was born on October 12, 1961 and was forty-three (43) years old when the ALJ issued his decision.  (R. 9, 50, 111.)  Plaintiff completed the sixth grade. (R. 50.)  He has worked as a nursery worker, concrete worker, citrus picker, cucumber picker, and construction worker.  (R. 11, 129, 144).   Plaintiff, who is Haitian, cannot

---

[18] See Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077  (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] See Walker at 1003.

[20] See Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

speak, read or write English.  (R.  121, 214.)  Plaintiff contends that he has been unable to work since May 28, 2000 when his legs were broken in a car accident. (R. 128.)

On May 28, 2000, Plaintiff was admitted to the emergency room with a trimalleolar fracture to the left ankle and a compound right tibial and fibular shaft fracture to the right leg. (R. 176.)  Stephen Beissinger, M.D. performed closed reduction surgery and applied a short leg cast to the left ankle and a long leg cast to the right leg. (R. 176-79.)

Over the next seven months, Plaintiff had follow-up appointments with Dr. Beissinger on a monthly basis. (R. 207-15.)  On July 12, 2000, Dr. Beissinger noted that Plaintiff could use his left lower extremity to assist with transfers, but that he should avoid any painful or extended weightbearing stresses on it.  (R. 212.)  On August 7, 2000, Dr. Beissinger noted that Plaintiff's fractures were healing, that he could begin putting weight on his left ankle and that he could do limited household ambulation with a walker.  (R. 211.)   On September 11, 2000, Dr. Beissinger reported that Plaintiff's left ankle had clinically and radiographically healed but that Plaintiff should use a walker for ambulation.  (R. 210.)  Dr. Beissinger further noted that Plaintiff's right compound fracture was healing and that he should begin to put weight on his right leg. (*Id.*)  On October 9, 2000, Dr. Beissinger noted that Plaintiff's right leg was continuing to heal but that it could not yet handle unprotected weight-bearing stress.  (*Id.*)  On November 20, 2000, Plaintiff still had a short-leg walking cast on his right leg.  (R. 208.)  Dr. Beissinger noted that Plaintiff's fractures were healing satisfactorily, but that he should use a walker and avoid any painful weight-bearing stress. (*Id.*) On December 18, 2000, Dr. Beissinger noted that Plaintiff's fractures had clinically and radiographically healed and

that although Plaintiff was carrying a cane, he was "essentially ambulating independently using the cane for steadiness with a relatively normal gait."  (R. 207.)

On May 16, 2001, approximately one year after the car accident, Plaintiff had a follow-up appointment with Dr. Beissinger.  (R. 204-06.)  Plaintiff reported that he was walking 20 minutes to an hour three times per day for rehabilitation but that he had discomfort over the anteromedial aspect of both ankles after extended walking and a tendency towards swelling.  (R. 204.)  Dr. Beissinger noted that Plaintiff had a "somewhat stiff gait" and was carrying a cane for "steadiness/confidence."  (*Id.*)  Dr. Beissinger further noted that x-rays showed that the right distal tibia and fibular fractures had healed with satisfactory alignment and the left ankle trimalleolar fracture had healed with a mild decrease in joint space.  (*Id.*)  Dr. Beissinger's impression was that Plaintiff had residual ankle arthralgia[23] with a tendency toward residual stiffness and weakness.  (R. 205.)  Dr. Beissinger recommended physical therapy three times per week but noted that Plaintiff had financial constraints.  (*Id.*)

On November 13, 2002, after the first administrative hearing and at the request of the ALJ, Plaintiff underwent a consultative evaluation with Bernadette Santos, M.D.  (R. 224-31.)  Plaintiff reported that after the car accident he spent about six months in a wheelchair, he used a walker for another six months and then he used a single point cane.  (R. 224.)  Plaintiff reported severe pain in both ankles that worsens with weather changes and after prolonged standing.  (*Id.*)  Plaintiff also reported cramping in both legs and low back pain.  (*Id.*)  Plaintiff reported that he uses a cane all of the time.  (*Id.*)

---

[23] Arthralgia is joint pain.  <u>See</u> 5-19 Attorneys' Textbook of Medicine (third Edition) P. 19.60.

With regard to daily activities, Plaintiff reported living alone, cleaning, cooking, dressing and bathing and that his brother helps by paying bills, shopping for groceries and doing laundry.  (*Id.*) Plaintiff reported that he rides his bicycle to the store one and one half blocks away. (*Id.*)

Based on her evaluation, which included a physical examination,  Dr. Santos concluded that Plaintiff would be able to tolerate up to two hours of ambulation before he would need rest and that he would need an assistive device for balance.  (R. 226.) She opined that he had no limitations as to sitting, in the upper extremities or with manipulation.  (*Id.*)  She opined that he could never climb, balance, crouch, crawl or stoop.  (R. 226, 228.)  She further noted that he had limited ability to speak English but that he appeared to understand and hear quite well.   (R. 226.)  Dr. Santos opined that although Plaintiff's ability to lift/and or carry was not limited in a seated position, his ability to lift was limited when standing due to his decreased ability to walk -- i.e., occasionally he could lift less than 10 pounds and frequently he could lift 10 pounds. (R. 226-27.)  Dr. Santos further opined that Plaintiff was limited in pushing and/or pulling with the lower extremities due to ankylosed left ankle[24] and decreased range of motion with the right ankle. (R. 228.)

On November 13, 2003, Plaintiffs had x-rays taken of her cervical spine, lumbar spine and left ankle.  (R. 232.)  X-rays of Plaintiff's cervical spine showed straightening of the upper cervical spine with loss of the normal cervical lordotic curvature and no acute bone deformity.  (*Id.*)  X-rays of Plaintiff's lumbar spine showed mild scoliosis and

---

[24] Ankylosed refers to a stiff joint -- i.e., the ankle. <u>See</u> 1-B Attorneys' Dictionary of Medicine 350.

no acute bone deformity. (*Id.*) X-rays of Plaintiff's left ankle showed a previous fracture of the distal tibia/fibula; the periosteum and cortex were normal.  (*Id.*)

After a second car accident on March 27, 2004, Plaintiff was treated in the emergency room. (R. 271-72.) Plaintiff subsequently received chiropractic treatment for complaints of back pain and shoulder pain.  (R. 233-73.)

There are three physical residual function capacity ("RFC") assessments of record which were performed by non-examining state agency physicians.  James J. Green, M.D. performed an assessment on September 5, 2000 (R. 188-95) and Jim Takach, M.D. performed a second assessment on February 25, 2001. (R. 196-203.) Based on their review of the medical records, Green and Takach concluded that Plaintiff could occasionally lift/carry up to 20 pounds, frequently lift/carry up to 10 pounds, walk/stand for at least two hours in an 8-hour workday, limited pushing and/or pulling in the lower extremities, occasionally climb ramps/stairs, balance, stoop, kneel, and crouch, but never climb ladder/rope/scaffolds.  (R. 189-90, 197-98.)  Green found that Plaintiff should avoid concentrated exposure to working at open heights (R. 192 ) and Takach found that Plaintiff should avoid even moderate exposure to hazards, including machinery and heights.  (R. 200.)

The final assessment was performed by Edward W. Holifield, M.D. on July 19, 2001, more than one year after Plaintiff's car accident.  (R. 216-23.)  Holifield found that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk/sit for about six hours in an 8-hour workday, (R. 217.)  Holifield found that Plaintiff had no other limitations.  (R. 217-20.)

At the September 17, 2004 hearing, Plaintiff testified that he was not able to walk for a year and a half after his car accident and that he still uses a cane.  (R. 51.)[25] Plaintiff also testified that he has problems with his shoulder (R. 52) and his lower back. (R. 53.)  Plaintiff testified that he lives by himself, sometimes does his own laundry, sometimes cleans his house, rides his bike once or twice a week for five to ten minutes, watches television and reads.  (R. 54-55.) Plaintiff testified that he has to sit down to put on his shoes and pants.  (R. 59.)  Plaintiff further testified that he would not be able to lift 20 pounds, he cannot stand a lot and he can sit for only 20-30 minutes before his legs swell and his back begins to ache. (R. 57.)  Additionally, Plaintiff walks every morning "five minutes back and forth" and if he tries to go further he has to rest for several days.  (R. 57.)

The ALJ determined that claimant is status post motor vehicle accident fractures of the left ankle and right tibia/fibula.  (R. 15.)  The ALJ determined that, while these impairments were severe, Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (*Id.*)

The ALJ then determined that Plaintiff retained the physical RFC to lift and/or carry at least 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for at least 2 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and perform push/pull activities on an occasional basis.  (R. 16.)   The ALJ found that Plaintiff has nonexertional limitations in that he can only perform postural

---

[25] There was a Haitian-Creole interpreter at the hearing. (R. 9.)

activities on an occasional basis.  (*Id.*)  The ALJ then found that Plaintiff could not

perform his past relevant work because it involved standing and/or walking for about 6

hours in an 8-hour workday and lifting greater than 10 pounds occasionally. (R. 17.)

The ALJ found that despite Plaintiff's nonexertional limitations (i.e. postural

activities and pushing/pulling with the lower extremities), Plaintiff is able to perform

substantially all of the full range of sedentary work.  (R. 17-18.)  Accordingly, the ALJ

applied Rule 201.23 of the Medical-Vocational Guidelines (the "grids")[26] as a

"framework" and found that Plaintiff was not disabled. (R. 18.)  The ALJ did not consult

a vocational expert.

## V. <u>DISCUSSION</u>

Plaintiff's arguments -- i.e. that the ALJ erred by not giving Dr. Santos' testimony

substantial weight and that the ALJ erred by relying on the grids and not calling a

vocational expert -- both turn on the same issues.  (R. 228.)[27]  Accordingly, the Court

will discuss the arguments together.

The ALJ found that Plaintiff retained the RFC to lift and/or carry at least 10

pounds occasionally and less than 10 pounds frequently, stand and/or walk for at least

2 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and perform

push/pull activities on an occasional basis.  (R. 16.)  The ALJ found that Plaintiff has

---

[26] 20 CFR Pt. 404, Subpt. P. App.2 Rule 204.00.

[27] Plaintiff also contends that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain. Except to the extent discussed below regarding Plaintiff's use of a cane, the Court finds no error in the ALJ's evaluation of Plaintiff's subjective complaints of pain.

"nonexertional limitations in that he can perform postural activities on an occasional, but not frequent or repetitive, basis."  (*Id.*)[28]

The ALJ's finding regarding Plaintiff's postural limitations mirrors the conclusions reached by two of the three non-examining state agency doctors.[29]  Both Doctor Green and Doctor Takach concluded that Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. 190, 198.)[30]  However, Dr. Santos, who actually examined Plaintiff, opined that Plaintiff should *never* climb, balance, kneel, crouch, crawl or stoop. (R. 226, 228.)[31]  In reaching his conclusion that Plaintiff is limited to performing postural activities on an occasional basis, the ALJ did not discuss Dr. Santos' opinion.[32]

It is well-settled, that the opinions of non-examining doctors are "entitled to little weight and taken alone do[ ] not constitute substantial evidence to support an administrative decision."[33]  Although Dr. Santos only examined Plaintiff on one occasion,

---

[28] The terms exertional and nonexertional describe types of functional limitations or restrictions resulting from a medically determinable physical or mental impairment.  See Phillips v. Barnhart, 357 F.3d 1232, 1242 n.11 (11th Cir. 2004)(citations omitted).  Exertional limitations affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling.  See id.  Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands.  See id.

[29] Doctor Holifield concluded that Plaintiff has no postural limitations.  (R. 218.)

[30] However, both doctors concluded that Plaintiff should never climb ladders, ropes or scaffolds. (R. 190, 198.)

[31] While acknowledging that the ALJ did not specifically discount Dr. Santos' opinion regarding postural limitations, Defendant argues that the ALJ implicitly rejected "the unsupported and inconsistent aspects of Dr. Santos' opinion. See Doc. 26, page 15.  However

[32] The ALJ merely noted that Dr. Santos opined that Plaintiff "had postural limitations in climbing, balancing, crouching, crawling and stooping."

[33] See Swindle v. Sullivan, 914 F.2d 222, 226 n.3 (11th Cir. 1990).

and as such her opinion is not entitled to the deference given to a treating physician,[34] her opinion is entitled to more weight than the opinions of non-examining state agency doctors.

In addition, the ALJ did not consider what impact a cane would have on Plaintiff's abilities to do a full range of sedentary work.  The ALJ rejected as not credible Plaintiff's testimony that he used a cane to ambulate.   (R. 15-16.)  The ALJ appears to have relied solely on Dr. Beissinger's December 18, 2000 note (approximately seven months after the accident) that Plaintiff was "essentially ambulating independently using the cane for steadiness with a relatively normal gait." (*Id.*)  However, the ALJ did not address Dr. Santos' opinion that Plaintiff "will need an assistive device for balance" (R. 226) or Dr. Beissinger's most recent note on May 16, 2001, that Plaintiff had a "somewhat stiff gait" and was carrying a cane for "steadiness/confidence." (R. 204) Accordingly, the ALJ's decision to reject Plaintiff's testimony regarding his use of a cane was not supported by substantial evidence.

Social Security Ruling 96-9P recognizes that the use of a hand-held assistive device (i.e. cane) can impact the sedentary occupational base depending upon why the individual uses the cane.[35]   Thus, the ALJ must consider the particular facts of the case -- i.e., whether the cane is needed all the time, periodically, or only in certain circumstances; whether it is needed for distance or certain types of terrain.[36] Accordingly, the ALJ erred by failing to consider in his RFC analysis Plaintiff's use of a

---

[34] See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

[35] See Social Security Ruling 96-9P, 1996 WL 374185 (SSA 1996).

[36] See id.

13

cane.  As such, this matter is due to be remanded for the ALJ to reconsider Plaintiff's RFC in light of Plaintiff's postural limitations and Plaintiff's use of a hand-held assistive device.

The ALJ's error at the fourth step also affected the ALJ's findings at the fifth step. Based on his RFC finding, the ALJ determined that Plaintiff could not perform his past relevant work.  Thus, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists in the national economy.[37]  The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony.[38]  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.[39]

In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.[40] This burden may sometimes be met through exclusive reliance on the "grids" when each variable on the appropriate grid accurately describes the claimant's situation.[41] However, exclusive reliance on the grids is not appropriate either when the claimant is

---

[37] See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

[38] See id.

[39] See id.

[40] See Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).

[41] See Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills.[42]

Here, the ALJ relied solely on the grids and did not consult a vocational expert. This was based on the ALJ's conclusion that Plaintiff had the exertional capacity to perform substantially all of the requirements of sedentary work and that Plaintiff's non-exertional impairments did not significantly limit his basic work skills.[43]  However, as discussed above, the ALJ failed to consider Dr. Santos' opinion regarding Plaintiff's postural limitations and Plaintiff's use of a hand-held assistive device.  Accordingly, this matter is due to be remanded for the ALJ to reconsider, with vocational expert testimony if appropriate, whether Plaintiff can perform other work which exists in the national economy.

## VI. CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner, for an Administrative Law Judge to: (1) properly consider the opinion of Dr. Santos; (2) reconsider Plaintiff's RFC in light of Plaintiff's postural limitations and Plaintiff's use of a cane; and (3) reconsider, with vocational expert testimony if appropriate, whether Plaintiff can perform other work which exists in the national economy; and (4) conduct any additional proceedings the Commissioner deems

---

[42] See id. at 1002-03.

[43] The ALJ's conclusion relied, at least in part, on his finding that "stooping, crouching and bending are required occasionally, at most in sedentary work activity."  (R. 17.)  As noted above, the ALJ did not consider Dr. Santos' opinion that Plaintiff should never stoop or crouch.

appropriate. The Clerk is directed to enter final judgment in favor of the Plaintiff consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on December 15 , 2005.

GARY R. JONES
United States Magistrate Judge

Copies to:
        All Counsel

16